## Pennsylvania Central Brewing Company *v.* Lehigh Valley Coal Company, Appellant.

*Mines and mining—Rights of surface owner—Access to strata beneath coal—Artesian well—Destruction of well—Case for jury.*

1. The owner of land, who has conveyed to another the underlying coal, is entitled to access to the strata beneath the coal, and is entitled to sink an artesian well through the coal strata for the purpose of obtaining water.

2. In an action against a coal mining company, which owned the coal underlying the plaintiff's land, to recover damages for the destruction of an artesian well through the coal strata for the purpose of supplying water to plaintiff's brewery, the case was for the jury and a verdict for plaintiff was sustained where it appeared that the well was eight inches in diameter and was cased with an iron pipe and cement; that defendant was informed of the location of the well and when about to mine the coal around it offered to leave the coal in place if defendant would pay for it, which plaintiff declined to do; that the evidence justified the inference that in mining the coal the pipe and the casing of the well were negligently destroyed by the defendant; and that subsequently plaintiff requested permission to enter the mine and repair the pipe, but was refused.

Argued April 12, 1915. Appeal, No. 147, January T., 1914, by defendant, from judgment of C. P. Luzerne Co., May T., 1909, No. 219, on verdict for plaintiff, in case of Pennsylvania Central Brewing Company v. Lehigh Valley Coal Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Trespass for the destruction of an artesian well. Before GARMAN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $8,000, and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, answers to points, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*P. F. O'Neill,* with him *F. W. Wheaton,* for appellant. —The case should have been withdrawn from the jury, no malice or negligence being shown : Sommer v. Wilt, 4 S. & R. 19.

The plaintiff's loss resulted from the proper and lawful exercise of right on defendant's part and was therefore damnum absque injuria : Westmoreland & Cambria Natural Gas Co. v. Dewitt, 130 Pa. 235 ; Wheatley v. Baugh, 25 Pa. 528 ; Haldeman v. Bruckhart, 45 Pa. 514 ; Collins v. Chartiers Valley Gas Co., 131 Pa. 143 ; Lybe's App., 106 Pa. 626.

*Thomas F. Farrell,* with him *H. A. Shovlin* and *John R. Halsey,* for appellee.—The surface owner is entitled to a means of access to the strata beneath the coal, which he has sold : Chartiers Block Coal Co. v. Mellon, 152 Pa. 286 ; Collins v. Chartiers Valley Gas Co., 131 Pa. 143.

OPINION BY MR. JUSTICE POTTER, July 3, 1915 :

This was an action of trespass brought by the plaintiff to recover damages from the defendant company for the alleged negligent or wilful destruction of an artesian well, which was the source of its water supply. Plaintiff was the owner of a tract of land in the City of Hazleton, upon which was erected a brewery plant. Defendant owned the coal under plaintiff's land with the right to mine and remove it. In the year 1888 plaintiff drove an artesian well from the surface of its land through the

coal in the underlying strata, to a depth of 983 feet, for the purpose of supplying water to the brewery. The well was 8 inches in diameter, was cased for a distance of 600 feet with iron pipe, 6 inches in diameter, and the space about the pipe was filled in with cement. Plaintiff was able to pump through the well about 28 gallons of water a minute from the time it was sunk until June, 1904, when the water entirely failed. The evidence offered on the trial tended to show that the failure of the water was due to the breaking of the pipe by defendant's employees while conducting its mining operations. It appears that in the year 1902, defendant notified plaintiff that it was about to mine the coal underneath the brewery with the probable result of injury to or destroying the well, and that it offered to leave in place around the pipe a certain amount of coal for its protection, if plaintiff would pay for such coal at the market price. Plaintiff declined the proposition, asserting that defendant had no right to carry on its mining in such a manner as to injure its pipe, and gave notice that if any injury should be done to the well, defendant would be held responsible therefor. There was also evidence to the effect that after the pipe was broken plaintiff's manager asked permission of defendant's superintendent to go into the mine and repair the break, but the superintendent refused this request, and denied that his workmen had damaged the pipe. The trial resulted in a verdict for the plaintiff. Defendant has appealed, and all the assignments of error here presented complain in effect, of the action of the court in refusing binding instructions for the defendant, and in submitting the case to the jury. Under the decision of this court in Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, the right of plaintiff to sink a well through the coal strata underneath the surface of its land, cannot be doubted. It was there expressly held that the owner of land, who had conveyed to another the underlying coal, was entitled to access to the strata beneath the coal. The same principle applies

to the sinking of an artesian well for the purpose of obtaining water. In the present case the negligence charged in plaintiff's statement was that defendant "unlawfully, negligently, wilfully and wantonly broke through the iron pipe of said artesian well," and thereby destroyed the well, and cut off plaintiff's supply of water. The evidence offered on the part of plaintiff, as to negligence in the manner in which the coal was removed from around the pipe, was weak, but it was supplemented by evidence offered by defendant, which showed the manner in which the pipe was actually broken. A witness, Caleb Williams, defendant's inside foreman, testified as follows: "We drove a heading from breast No. 6 to breast No. 5, and in driving this heading came in contact with this bore hole, and ......the miner driving the heading opened the bore hole. It was what we call an opening shot in the heading and this opening shot broke the pipe. I think, if my judgment serves me right, it was about 8 inches long up and down when I saw it." Witness further said that he knew the pipe was somewhere in the pillar which they were mining. He had a map showing the location of the well. Thomas Young, the mining foreman, also called by defendant, testified that "the pipe was struck in the heading." From the testimony of these witnesses it is apparent that the pipe was broken by defendant's employees while blasting coal. Knowing, as defendant did, the location of the well the jury could fairly infer that the employees were negligent, when they exploded a blast or "shot," as they called it, so near the pipe as to break it. It is suggested by counsel for appellant that it was the duty of the mine foreman, under the act of assembly, to locate the cross-heading, and that defendant should not be held responsible for his act. But the negligence did not consist in the location of the heading, but in the manner in which the coal was removed. This was done by the workmen, and there was evidence, from which the jury were justified in inferring

that the work was done without due regard for the protection of plaintiff's pipe. While it did not bear directly upon the question of negligence, yet the fact as shown by the evidence, that defendant's superintendent refused plaintiff permission to go into the mine after the break, to repair the pipe was significant, in that it plainly showed a disposition to act in disregard of the plaintiff's right in the premises. Just why the breaking of the pipe at a point more than 800 feet from the bottom of the well, should have interfered with the flow of water from below the point of breakage was not made clear. The break would, of course, prevent the water from going higher in the pipe, but how could it affect the water supply below? However, that would go merely to the question of the amount of damages, and that question is not raised by any of the assignments of error. The plaintiff was entirely within its legal rights in putting down the well, and in maintaining the pipe through which the water passed up, in good condition. While the defendant had the right to remove the coal from around the pipe, it had no right to interfere in any way with the well, or with the pipe in which the water was conveyed to the surface. The learned trial judge was clearly right in submitting the case to the jury. In the manner of its submission he gave to the defendant the full benefit of everything to which it was entitled.

The assignments of error are overruled, and the judgment is affirmed.